OPINION OF THE COURT
John W. Sweeny, J.
This is an article 78 proceeding in which petitioner seeks a judgment reversing the December 20, 1978 decision of the State commissioner made at petitioner’s request without a hearing, pursuant to the provisions of 18 NYCRR 358.19.
*25 Petitioner and her two daughters (ages 9 and 11) are recipients of Social Security survivor benefits. At the time in question, June 14, 1978, each received a $225.10 monthly payment from the Social Security Department. It is conceded that these monthly payments, totaling $675.30, were the only income received by this family unit.
Petitioner and her daughters are "categorically” eligible for Medicaid (Social Services Law, § 366, subd 1, par [a], cl [5], subcl [in]; 18 NYCRR 360.24 [a] [2] [iii]).
Because one of her daughters was in imminent need of a tonsillectomy, petitioner applied to the Department of Social Services of Orange County for medical assistance for herself and both daughters on June 14, 1978. (18 NYCRR 360.25 requires that a local agency consider the eligibility of all members of a household whenever one member makes an application for medical assistance.)
The Orange County Department of Social Services determined that the petitioner and each of her daughters possessed surplus income and denied assistance until each child utilized a monthly surplus of $179.53 and the petitioner expended her surplus of $89.77. The decision now under review is the State commissioner’s affirmance of that local agency action.
Section 366 (subd 1, par [a], cl [5]) of the Social Services Law provides that persons who are not in need of public assistance yet do not, "according to the criteria and standards established by this article or by action of the department(emphasis supplied) have sufficient income shall be given medical assistance. Paragraph (b) of subdivision 2 of section 366 directs that "there shall be a reasonable evaluation of [an applicant’s] income or resources.”
In section 366 (subd 2, par [a], cl [8]), the Legislature has set forth specific minimum net income exemptions for households applying for Medicaid. Pursuant to the authority delegated by section 366 (subd 1, par [a], cl [5]), the State commission has by its administrative letter (76 ADM 17) attempted to implement a program to accommodate the needs of households such as petitioner’s which are related to a Federal category of assistance.
76 ADM 17 provides that an income exemption shall be allowed for households that are related to a Federal category of assistance either in the amounts provided by the Legislature in section 366 (subd 2, par [a], cl [8]) of the Social Services Law, or in an amount of the household need for a grant of *26 public assistance, whichever amount is greater (administrative letter 76 ADM 17).
The intention of 76 ADM 17 would seem to be to provide the most favorable income exemption for such applicants in order that they may receive medical assistance at least equal to that provided to recipients of public assistance. By setting a greater income exemption than that provided by the Legislature, a smaller surplus or "pay down” is established before Medicaid becomes available to the nonrecipient of public assistance.
In calculating the available income of each of petitioner’s children, the respondents added only that child’s monthly income with that of her mother. Respondents, therefore, acknowledged that the mother and each child make up two separate eligibility units and that the separate and distinct survivor benefit of one child is not available income to her sibling (cf. Matter of Genin v Toia, 47 NY2d 959, and cases cited therein). However, against the income figure of $450.20 for each two-member mother-child family unit, the respondents deducted a figure representing the pro rata needs for two thirds of a three-member public assistance family unit for purposes of determining surplus income for each of the daughter’s medical needs.
At the time of petitioner’s application, a three-member AFDC household in Orange County was entitled to a $200 monthly grant (Social Services Law, § 131-a) plus a $206 maximum rental allowance (18 NYCRR 352.3 [a]), or a total of $406 per month. Two thirds of this figure, or $270.67, was deducted from the $450.20 and the balance of $179.53 was deemed surplus income available for each child’s medical care before she would become eligible for Medicaid. Similarly, by deducting the other one third of $406 from the mother’s $225.10 income, respondents determined that she had a monthly medical surplus of $89.77
The fundamental issue in this proceeding is whether the respondents were permitted to pro rate the needs of a three-member public assistance household and thereby reduce the income exemption below the minimum established by the Legislature in section 366 (subd 2, par [a], cl [8]) of the Social Services Law.
If each mother-child unit is considered a separate two-member household in need rather than two thirds of a three- *27 member household, then $350, the Medicaid level for two persons set by section 366 (subd 2, par [a], cl [8]) of the enactment, being greater than $330 (the basic allowance under section 131-a of the law and 18 NYCRR 352.3 [a] for two people), rather than $270.67 (two thirds of the $406 figure) would be the subtrahend of this otherwise simple problem and the surplus income would only amount to $100.20. Thus, each mother-child unit would be required to expend $79.33 less than respondents have calculated in any one month before being eligible for outpatient Medicaid assistance, and $475.98 less (six months multiplied by $79.33) to become eligible for inpatient Medicaid assistance (see 45 CFR 248.3 [c] [4]; 18 NYCRR 360.5 [d] [2] [i]). By the same reasoning, $241.67 (Medicaid level for one), not $135.33 (one third of $406) would be the mother’s needs. Petitioner would then have no surplus and would, therefore, be immediately eligible for Medicaid and possibly even supplementary assistance (§ 131-a, subd 2).
By pro rating needs, the respondents have effectively destroyed much, if not all, benefits apparently intended by 76 ADM 17. What initially appears to be a greater income exemption figure quickly is reduced below the level established by the Legislature. The end result is, in all but one case, a greater surplus or "pay down” required before medical eligibility is attained. The practical result is an impermissible situation where the needy medical assistance applicant is placed at a substantial disadvantage, vis-á-vis the public assistance recipient (Aitchison v Berger, 404 F Supp 1137, affd 538 F2d 307, cert den 429 US 890). Respondents, therefore, have erroneously established a program out of harmony with the statute since it provides medical assistance substantially below the specific standards set forth by the Legislature in section 366 (subd 2, par [a], cl [8]) (Matter of Jones v Berman, 37 NY2d 42, 53).
By pro rating needs with those of the nonresponsible relative, a Medicaid applicant’s available income is fictitiously raised and an inequitable result is reached similar to pro rating income with that of a nonresponsible relative.
After June of 1978, the primary insurance amount (PIA) (US Code, tit 42, § 415) of petitioner’s deceased would be approximately $392, with a maximum family benefit of $719. Computing approximate monthly survivor benefits and the resulting Medicaid eligibility for each child> of several hypothetical family units, and comparing the results with a two- *28 member public assistance family unit, points out the inequity of respondents’ formula.
Based on the above Social Security figures, a widow with only one child would receive a total of $589 in Social Security survivor benefits (income), would have an estimated medical surplus of $239, and would therefore have a balance of $350 remaining for nonmedical necessities in any one month. This balance is $20 in excess of the $330 monthly allotment for a mother and one child receiving public assistance and demonstrates no significant disparity between the two classes since there has been no need to pro rate.
However, a widow and two children, petitioner’s status, receive for each mother-child unit a total of $479, have a $209 medical surplus, and would therefore have a balance of $270 for nonmedical necessities in any one month, or $60 less than the mother and one-child unit receiving public assistance.
A widow and four children receive for each mother-child unit $288, have a $72 medicál surplus, and a balance left for nonmedical necessities of $216, or $114 less than the mother and one-child unit receiving public assistance.
Finally, a widow and seven children receive for each mother-child unit $180, have a medical surplus of $16, and a balance for nonmedical necessities of $164, or $166 less than the mother and one-child unit receiving public assistance.
The above inequities are compounded because of the added fiction that the full amount of a mother’s income is considered available to each of her children. In any case, as previously indicated, contrary to the apparent legislative intent, the respondents have placed each mother-child unit of the categorically eligible family with two or more children in a substantially inferior position to that of the public assistance mother-child unit.
If we applied the $350 income exemption established by the Legislature to each of the last three examples, then medical eligibility would be ensured at just about the point where available nonmedical income reached the subsistence level of that provided to the two-member unit receiving public assistance, viz, $330. Consequently, there would be no appreciable disparity and the legislative mandate would be satisfied.
Accordingly, the December 20, 1978 determination is hereby annulled and respondents are directed to recalculate petitioner and each child’s eligibility in accordance with the *29 minimum income exemptions established by the Legislature for one- and two-member family units and without pro rating needs with those of nonresponsible relatives.
Respondents shall also consider whether petitioner is entitled to retroactive benefits for three months prior to June 14, 1978 (18 NYCRR 360.16 [c]).
The application for attorney’s fees pursuant to the provisions of section 1988 of title 42 of the United States Code is denied based on the majority opinion in Matter of Bess v Toia (66 AD2d 844) and the construction given to section 1983 of title 42 of the United States Code by the United States Supreme Court in Chapman v Houston Welfare Rights Organization (441 US 600).
The challenge to the validity of the provisions of 18 NYCRR 360.5 (d) (2) (i) is also rejected (Matter of Poulos v D’Elia, 66 AD2d 820).