PAUL VAN DYKE, Respondent, *v.* MARY VAN DYKE, Appellant.

Third Department, June 29, 1951.

*S. J. Mauhs* for appellant.

*David B. Alford* for respondent.

Deyo, J. Under date of May 22, 1945, the parties hereto entered into a separation agreement whereby custody of the four children of the marriage, then ranging from ten to nineteen years of age, was given to the defendant wife, conditioned however, upon her continuing to support the children at her own expense. The defendant wife was also given the use of a house and lot which was owned by the parties as tenants by the entirety, likewise upon condition that she should maintain the premises as a home for the children. In the event the defendant failed to support the children, she was to lose custody of them, and if she failed to maintain the home, possession thereof was to revert to the plaintiff. In other words, in order to retain custody of her children the defendant wife was required to assume the full burden of their support, the plaintiff husband's sole contribution being his right to the use of the family home. It will be noted that the defendant was not represented by counsel when this agreement was signed. As soon as her signature had been secured, a summons with notice in a divorce action was served upon the defendant. Upon her default, proof was taken before Mr. Justice Russell, who granted a judgment of divorce which was entered June 27, 1945, and which made no mention of the separation agreement and which contained no provision relative to the custody of the children or to their support. On August 29, 1946, the defendant moved to open her default before Justice Russell, on the ground that she had been coerced into executing the separation agreement by means of threats, and that she had been misled into believing that the summons was a part of the separation. Justice Russell, in a memorandum dated March 14, 1947, concluded that the defendant had not been misled, so far as the divorce action was concerned, and that her default therein had been willful and intentional. He therefore denied the motion to open the default, but suggested that a motion should be made to modify the judgment to provide for the support of the children. No order based on this memorandum was ever signed or entered. Thereafter the defendant moved before Mr. Justice Bookstein for an order opening her default, or in the alternative, for a modification of the decree to require the plaintiff to support the children. Under date of March 16, 1948, Justice Bookstein denied the motion without prejudice to a further application to modify the judgment in accordance with the provisions of section 1170 of the Civil Practice Act. Apparently, this order was intended to be superseded by the order appealed from, dated May 14,

1948, which denied defendant's motion *in toto*. In his opinion Justice BOOKSTEIN stated that the motion to open the default was *res judicata* in view of Justice RUSSELL's previous decision, and that the court was powerless to modify the judgment inasmuch as the separation agreement had not been abrogated or set aside.

Regardless of whether Mr. Justice RUSSELL's denial of the defendant's motion to open her default was or was not *res judicata,* it was clearly the correct decision on the basis of the papers then before him. We find nothing in the subsequent record to warrant any different conclusion. The order, insofar as it denies the application to open the default, will therefore be affirmed.

We are not in accord, however, with the conclusion of the court below that the separation agreement divested it of its statutory power to modify the decree in respect to the custody and support of the children. We are not unmindful of the well-established rule that provisions in separation agreements providing for the support of a wife will ordinarily be sustained until the agreement is set aside or impeached in an action brought for that purpose. (*Galusha* v. *Galusha,* 116 N. Y. 635.) There is some question, however, whether this rule should be extended to matters relating to the support and custody of children. (*Kunker* v. *Kunker,* 230 App. Div. 641, 645.) The welfare of children who, as it is often said, are the wards of the court, is a matter of vital public concern. When matrimonial difficulties result in broken homes, the courts are mandated to provide for their support, custody and welfare " as justice requires ". (Civ. Prac. Act, § 1170; see, also, Domestic Relations Law, § 70.) That mandate may or may not be complied with if the court in every instance gives blind adherence to what the parties have decided between themselves. In any event it is safe to say that such agreements will be subject to the closest and most careful scrutiny.

Even when the support of the wife alone is involved, agreements of this type must satisfy certain minimum requirements if they are to be upheld. At the outset they must be supported by adequate consideration (*Dworkin* v. *Dworkin,* 247 App. Div. 213), and will be disregarded if the payments made thereunder are " obviously insufficient." (*Goldman* v. *Goldman,* 282 N. Y. 296.) The agreement under consideration fails to meet this primary requirement. All that the defendant received, except for some furniture, was the use of a house to which she was

already entitled as a tenant by the entirety. That is hardly sufficient or adequate consideration for an agreement to educate, clothe and maintain four children.

Lump sum payments by which a husband purchases a release from his continuing obligation to support his wife are held to be void. (*Kyff* v. *Kyff*, 286 N. Y. 71.) At best, what little the plaintiff did part with in the instant case, was in the nature of a lump sum payment, and even if adequate, would not validate the agreement:

Most important, however, is the requirement that this agreement, in order to be upheld, must call for " regular, substantial, periodic payments ", representing a mutual admeasurement in dollars of the husband's continuing obligation to support his wife. They will not be countenanced if they constitute an attempt to release the husband from such obligation. (*Jackson* v. *Jackson*, 290 N. Y. 512, 516.) The obligation of a father for the support of his children is governed by the children's needs in relation to his financial ability. The agreement in question does not even recognize this obligation, much less discharge it. It contains no provision for any payment whatever, periodic or otherwise. It constitutes nothing more than an attempt to release the plaintiff from his moral, natural and statutory duty to support his children and to transfer that obligation to the defendant, without regard to her resources or her financial ability.

Since the agreement in question fails to comply with even this minimum requirement, it is invalid insofar as it relates to defense to a motion to modify the decree of divorce in that respect. The matter will therefore be remitted to the Special Term for further consideration of the application to modify the decree in respect to the custody and support of the children of the marriage.

Foster, P. J., Heffernan, Brewster and Bergan, JJ., concur.

Order reversed, without costs, and the matter remitted to the Special Term for further consideration of the application to modify the decree in respect to the custody and support of the children of the marriage.